UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| JOSE FRANKLIN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 12 C 2970 |
| | ) | |
| MARCUS HARDY, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

CHARLES P. KOCORAS, District Judge:

This matter comes before the Court on the motion of Defendants' Marcus Hardy ("Hardy"), Guy Pierce ("Pierce"), Tracy Engleson ("Engleson"), Salvador Godinez ("Godinez") and Shaun Bass ("Bass") (collectively "Defendants") to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons set forth below, the motion is granted in part and denied in part.

### BACKGROUND

Plaintiff Jose Franklin[1] ("Franklin"), also known as Monica Franklin, is a transgendered Illinois state prisoner confined at the Stateville Correctional Center ("Stateville") at all times relevant to this action. Godinez is and was the Director of the Illinois Department of Corrections. Hardy and Pierce were wardens at Stateville

---

[1] For the purposes of this motion only, we accept as true the well-pleaded allegations of Franklin's complaint.

during the time period in question. Engleson was the superintendent of Franklin's housing unit. Bass was Franklin's counselor at the correctional facility.

Prior to her incarceration, Franklin was diagnosed with gender identity disorder ("GID"). Franklin was undergoing hormone therapy and was prescribed several medications, including Spironolactone (an androgen inhibitor and estrogen augmenter) and Estradiol (a steroidal sex hormone). Franklin has not yet had sex reassignment surgery, but was contemplating it in the "near future."

Before Franklin's internment at Stateville, the medical staff at the Cook County Jail, where Franklin was being housed, provided her with a seven-day supply of her medications so that she could continue her drug therapy without interruption, pending review by health care providers at Stateville. Franklin arrived at Stateville on November 10, 2011. During intake procedures at Stateville, Franklin's prescription medications were confiscated. One of the members of Stateville's medical staff purportedly told Franklin, "We don't do that here." Furthermore the doctors and nurses on staff failed to prescribe treatment for her GID. Franklin went without her medications from November 10, 2011, through February 29, 2012 (and after that date, received her medications inconsistently). As a result of the denial and delay of her medications, Franklin claims to have sustained severe injuries including pain and suffering, depression, anxiety, an accelerated heart rate, chest pain, the development of bruises and bumps, the growth of facial and body hair despite prior laser removal, and withdrawal symptoms.

On January 30, 2013, Franklin filed a nine count second amended complaint alleging violations of her civil rights pursuant to 42 U.S.C. § 1983. Franklin claims that Defendants violated her constitutional rights by acting with deliberate indifference to her serious medical needs. Franklin alleges that for several months she was denied needed care and treatment, including hormone replacement therapy for her gender identity disorder, a condition for which she had been receiving treatment for several years prior to her arrival at Stateville. On April 22, 2013, Defendants filed the instant motion to dismiss.[2]

## LEGAL STANDARD

A Rule 12(b)(6) motion to dismiss is used to test the legal sufficiency of a complaint. *Hallinan v. Fraternal Order of Police of Chi. Lodge No. 7,* 570 F.3d 811, 820 (7th Cir. 2009). When reviewing a motion to dismiss, the court accepts as true all the factual allegations pleaded in the complaint and draws all reasonable inferences in favor of the nonmoving party. *Id.* Pursuant to Rule 8(a)(2), a complaint must contain "a 'short and plain statement of the claim showing that the pleader is entitled to relief,' sufficient to provide the defendant with 'fair notice' of the claim and its basis." *Tamayo v. Blagojevich*, 526 F.3d 1074, 1084 (7th Cir. 2008) (quoting Fed. R. Civ. P. 8(a)(2); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Additionally, the allegations in the complaint must "actually *suggest* that the plaintiff has a right to relief, by providing allegations that raise a right to relief above a speculative level."

---

[2] The health care staff defendants have not joined the motion to dismiss; the Court previously denied a motion to dismiss filed by Stateville's medical director. *See* Minute Order of August 3, 2012.

*Tamayo*, 526 F.3d at 1084 (emphasis in original). However, a pleading need only convey enough information to allow the defendant to understand the gravamen of the complaint. *Payton v. Rush-Presbyterian-St. Luke's Med. Ctr.*, 184 F.3d 623, 627 (7th Cir. 1999).

## DISCUSSION

The Seventh Circuit has held that a Wisconsin statute barring the state's Department of Corrections from providing hormone treatment to inmates suffering from GID was unconstitutional. *Fields v. Smith*, 653 F.3d 550, 554 (7th Cir. 2011). Correctional officials and health care providers may not act with deliberate indifference to an inmate's serious medical needs. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *Fields*, 653 F.3d at 554.

Defendants aptly point out that they cannot be held liable solely on the basis of blanket supervisory liability. The doctrine of respondeat superior does not apply to actions filed under 42 U.S.C. § 1983. *See, e.g., Kinslow v. Pullara,* 538 F.3d 687, 692 (7th Cir. 2008). However, section 1983 creates a cause of action based on personal liability and predicated upon fault; thus, "to be liable under § 1983, an individual defendant must have caused or participated in a constitutional deprivation." *Pepper v. Village of Oak Park*, 430 F.3d 809, 810 (7th Cir. 2005) (citations omitted). Franklin has adequately alleged such personal involvement.

According to Franklin, each of the Defendants was "made aware" of the need for treatment of her GID and failed to take action. Franklin alleges that she notified Hardy, Pierce, and Godinez by way of grievances, correspondences, "and/or other

administrative remedies;" that she sought the intercession of Engleson by requests in person; and that she filed multiple grievances with Bass that were not processed in a timely or adequate manner. If Defendants seek further details regarding the timing and degree of each Defendant's knowledge and involvement, that information can be ascertained through the discovery process. However, Franklin's representation that Defendants ignored grievances, letters, and personal pleas concerning the reported failure to provide necessary medical care states a colorable claim under 42 U.S.C. § 1983 against Hardy, Pierce, Engleson and Bass.

However, Franklin has not sufficiently alleged Godinez's personal involvement. The Director of the Illinois Department of Corrections is too far removed from decisions relating to the medical care of individual inmates at one correctional facility to be held liable under the facts alleged. *See, e.g., Gray v. Taylor*, 714 F. Supp. 2d 903, 911 (N.D. Ill. 2010) (no claims against IDOC's Director allowed in free speech case because "administrators cannot be expected to involve themselves with the minutiae of daily events in the lives of thousands of prisoners") (citations omitted); *Brown v. Ghosh*, No. 09 C 2542, 2010 WL 3893939, at *7 (N.D. Ill. Sept. 28, 2010) (the IDOC's Director would not be "directly involved or have knowledge of the day to day operations of dispensing medication or overseeing medical policies such that [he] can be held personally to have participated in or had knowledge of the decisions that led to the alleged deficiencies"); *Williams v. Carter*, No. 12 C 50140, 2012 WL 4815476, at *4 (N.D. Ill. Oct. 10, 2012) (a letter to Wexford's CEO was insufficient to trigger liability on the part of the corporation itself for an individual

inmate's medical care). Godinez's involvement is too attenuated for liability to attach and the second amended complaint is dismissed as to Godinez.

The Court recognizes that inmates have no protected interest in the satisfactory resolution of institutional grievances. *Grieveson v. Anderson*, 538 F.3d 763, 772 (7th Cir. 2008); *Antonelli v. Sheahan*, 81 F.3d 1422, 1430-31 (7th Cir. 1996). Nevertheless, a prison official may be held liable for failing to respond to violations of a prisoner's constitutional rights that come to his or her attention via the grievance process. *See Santiago v. Walls*, 599 F.3d 749, 758-59 (7th Cir. 2010); *see also Knight v. Wiseman*, 590 F.3d 458, 463 (7th Cir. 2009). "[N]onmedical officials can 'be chargeable with . . . deliberate indifference' where they have 'a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner.'" *Arnett v. Webster*, 658 F.3d 742, 754 (7th Cir. 2011) (quoting *Hayes v. Snyder*, 546 F.3d 516, 525 (7th Cir. 2008)). "Non-medical defendants cannot simply ignore an inmate's plight." *Arnett*, 658 F.3d at 755. Supervisors may not "turn a blind eye" to constitutional violations. *T.E. v. Grindle*, 599 F.3d 583, 588 (7th Cir. 2010) (quoting *Jones v. City of Chicago*, 856 F.2d 985, 992 (7th Cir. 1988)).

The instant case does not present a scenario where supervisory officials are shielded from liability because the plaintiff was receiving ongoing care from a correctional facility's health care professionals. *See, e.g., Johnson v. Snyder*, 444 F.3d 579, 586 (7th Cir. 2006) (fact that plaintiff's medical needs were being addressed by the medical staff insulated the warden from liability); *contrast Reed v. McBride*, 178 F.3d 849, 854-56 (7th Cir. 1999) (warden was required to act where officials allegedly

denied an inmate life-sustaining medication and food); *Burks v. Raemisch*, 555 F.3d 592, 595 (7th Cir. 2009) ("The Governor, and for that matter the Superintendent of Prisons and the Warden of each prison, is entitled to relegate to the prison's medical staff the provision of good medical care."). Where, as here, Franklin alleges that she went wholly without needed medical care, Defendants cannot shift blame to the health care providers employed by Wexford Health Sources, Inc. It is alleged that each of the Defendants was in a position to help Franklin obtain medical treatment in light of the health care staff's alleged refusal to render care.

## CONCLUSION

For the aforementioned reasons, the Defendants' motion to dismiss is denied as to defendants Hardy, Pierce, Engleson, and Bass. The motion to dismiss is granted as to defendant Godinez.

*Charles P. Kocoras*
_____
Charles P. Kocoras
United States District Judge

Dated:  June 19, 2013